UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 4:10-CR-279 |
| | § | |
| TROY R. SOLOMON | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM AND ORDER

**I.**

Before the Court is the defendant, Troy Romano Solomon's, motion to dismiss the government's indictment with prejudice, based on double jeopardy (Doc. No. 77). When the Court did not address the motion, the defendant filed an amended motion to dismiss (Doc. No. 98), the government filed a response (Doc. No. 103), and the defendant filed a reply (Doc. No. 104). After an evaluation of the documents presented by the parties, and a review of the legal principles argued, the Court is of the opinion that the defendant's motion should be granted.

**II.**

The defendant is an owner of Ascensia Nutritional Pharmacy located in Houston, Texas. In a multiple count indictment against the defendant and two co-defendants, the government charges that the defendant engaged in a conspiracy between January of 2004 and May 3, 2006, to "unlawfully distribute and dispense, outside the course of professional practice and not for legitimate medical purposes, various amounts of a mixture and substances known as hydrocodeine and hydrocodone products, and various other drugs and substances in violations of [federal law]." The record reflects that the defendant has already been convicted in the Western District of Missouri on, among other charges, a charge of: (a) conspiracy to distribute and

dispense controlled substances; and (b) conspiracy to "unlawfully distribute and dispense, outside the course of professional practice and not for legitimate medical purposes, various amounts of a mixture and substances known as hydrocodeine and hydrocodone products, and various other drugs and substances in violations of [federal law]." Hence, one of the conspiracy charges in the Missouri indictment charged the same offense based on similar or identical conduct with the exceptions that the alleged co-conspirators, and the "manner and means" by which the alleged conspiracy was accomplished, are different or nonexistent.

### III.

It is the defendant's contention that the "Houston conspiracy violates the Double Jeopardy Clause because [the defendant] has already been prosecuted for the same conspiracy." The record, the defendant argues, shows that the conspiracy charged in Houston is the "exact conspiracy" for which he was convicted in Missouri. In this regard, the defendant points to the fact that the AUSA for the Western District of Missouri stated in open court that "evidence regarding Dr. Okose['s] [Houston conduct] was part of the Missouri conspiracy and was being offered as such." As a result, no Rule 404(b) instruction was given to the jury.

The government argues that, while some of the conduct proffered in the Missouri conspiracy occurred in Houston, none of the conduct charged in the Houston indictment against the defendant occurred in Missouri. In arguing the distinction between the two indictments, the government points to the: (a) times alleged in the separate conspiracy indictments; (b) persons acting as co-conspirators; (c) overt acts alleged in furtherance of the "separate" conspiracies; and (d) places where the substantive criminal acts occurred. *United States v. Marable*, 578 F.2d 151, 154 (5th Cir. 1978). Hence, under the *Marable* test, the government contends that the conspiracies in Missouri and Texas were different conspiracies.

The government further asserts that the considerations that a court must undertake when determining whether the conduct alleged in separate conspiracies actually constitutes a single charge of conspiracy was addressed in *United States v. Felix*, 503 U.S. 378, 386 (1992). According to the government, *Felix* holds that relying on identical charges in separate indictments as the basis for a claim of double jeopardy may be fatal to a defendant's motion. This is so, argues the government, because among other factors, the conduct charged is critical to the jeopardy determination. The defendant disputes that *Felix* is the controlling authority. He argues that the *Felix* court "improperly considered the issue of whether the [alleged criminal] conduct had already been prosecuted." The defendant argues further that the "holding in *Felix* concerned evidence and testimony in the context of substantive offenses in one case, and overt acts in furtherance of a conspiracy in the other case."

The facts in *Felix* show that the defendant manufactured methamphetamine in Oklahoma in violation of federal law. When his facility was raided and shut down, he ordered precursor chemicals and equipment and had them delivered to a Missouri location in order to continue his illegal business. Felix was charged and tried in Missouri for attempting to manufacture illegal drugs. Later, Felix was charged by a separate indictment in Oklahoma with the offenses of conspiracy and one or more substantive counts. The Supreme Court, addressing a double jeopardy challenge, held that the prosecution of a defendant for conspiracy, where certain of the overt acts relied upon by the government were based on substantive offenses for which the defendant [had] been previously convicted, [did] not violate the Double Jeopardy Clause. *See Felix* 503 U.S. at 380-81. Hence, the Court is of the opinion that *Felix* does not settle the jeopardy issue in this case.

**IV**.

While *Felix* is not dispositive on its face, nevertheless, it provides guidance in the Court's evaluation of the underlying indictments and the application of *Kalish* and *Marable*. *See U. S. Kalish*, 690 F.2d 1144 (5th Cir. 1982). The Houston conspiracy alleges that the defendant, from January of 2004 through May 3, 2006, conspired with Drs. Peter C. Okose and Bede Nduka to fill prescriptions for various drugs "outside the course of professional medical practice and not for a legitimate medical purpose." According to the government, this conspiracy centered around the Ascensia Nutritional Pharmacy in Houston and did not involve persons charged in the Missouri indictment.

The Missouri conspiracy, that also indicted the defendant, began in August of 2004 and continued through October of 2005. It was alleged in the Missouri conspiracy that the defendant received prescriptions from Dr. Christopher L. Elder and forwarded them to The Medicine Shoppe in Missouri to be filled. Once filled, The Medicine Shoppe delivered the drugs to the defendant at 3003 South Loop West, Suites 415 and 450 in Houston via FedEx. The participants in the Missouri conspiracy included Nancy Lynn Rostie, the pharmacist at The Medicine Shoppe, Cynthia S. Martin, a courier of cash between Rostie and the defendants, the defendant as agent for Dr. Elder and Delmon L. Johnson, the manager of Ascensia Nutritional Pharmacy. The evidence showed that the defendant accepted shipments of drugs from The Medicine Shoppe for both South Texas Wellness Center and Ascensia.

The Houston conspiracy allegedly covered a period from January of 2004 through May 3, 2006. Like the Missouri conspiracy, the government alleges that the defendant obtained illegal prescriptions from Dr. Okose [not Dr. Elder] and, using the same Missouri pharmacy, obtained various drugs, especially hydrocodone products, for illegitimate medical purposes. Absent from
4 / 6

the Houston conspiracy are allegations that: (a) Dr. Elder provided the illegitimate prescriptions; (b) the source of the illegitimate drugs was The Medicine Shoppe in Missouri; (c) the defendant had a financial connection to the South Texas Wellness Center and worked alternately or concurrently at both the South Texas Wellness Center and Ascensia; and (d) the use of Dr. Elder prescriptions continued after he discontinued his association with the South Texas Wellness Center in January of 2005.

## V.

An analysis of the two indictments, the testimonial record in the Missouri case and the arguments of counsel, reveal that the Houston indictment "swallows" the Missouri indictment as it relates to the period during which the conspiratorious conduct is alleged. Common to the two indictments are The Medicine Shoppe, the South Texas Wellness Center, the defendant and Drs. Elder and Okose. The indictments charge that the defendant committed the same or related conduct in both venues. Notably, there are overt acts alleged in the Missouri conspiracy, but none in the Houston conspiracy. However, a close reading of the Houston conspiracy reveals that the Houston conspiracy relies on the same conduct upon which the Missouri conspiracy relied. Finally, the place(s) of the events charged in the Houston and Missouri conspiracies are the same. The activities for which the defendant is charged occurred at The Medicine Shoppe, South Texas Wellness Center and Ascensia Nutritional Pharmacy.

The connections between the two indictments are also supported by the testimony of the witnesses and the government's pleadings in the Missouri trial. The testimony shows that the defendant faxed prescriptions to The Medicine Shoppe in March of 2005, under the signatures of Drs. Okose and Elder. *See* [Transcript, Vol. IV]. Filled orders from The Medicine Shop were delivered to the defendant at the South Texas Wellness Center in September of 2005. The

Ascensia location was opened in February or March of 2005, but was not licensed by the state board to fill prescriptions. However, filled orders for drugs from The Medicine Shoppe were received by Ascensia in September of 2005. By December of 2005, the faxes from the defendant were all intended to supply Ascensia. And, filled prescriptions were delivered to the defendant at that location. *See* [Transcript, Vol. V, pp. 1127-29, 1173].

Finally, in the Missouri trial, the government argued that the conduct of the defendants in Houston was so "inextricably intertwined" with their conduct in Missouri that a 404(b) jury instruction was unnecessary. *See United States v. Phelps*, 168 F.3d 1048, 1057-58 (8th Cir. 1999); *see also United States v. Solomon, et al.*, [08-CR-0026, Doc. No. 269]. On this basis, the Missouri court permitted the admission of the Okose prescriptions and related testimony without an instruction to the jury.

The Court is of the opinion that whether the prescriptions were under the signature of Dr. Okose or Dr. Elder is of no consequence as it relates to the defendant. Switching doctors was simply a matter of convenience. The conduct engaged in by the defendant was the same – he sought to obtain and distribute controlled substances in violation of federal law. In both venues and under both indictments, the defendant was the center of the illegal activity.

Therefore, the Court is of the opinion and holds that the indictment against the defendant, Troy R. Solomon, should be and it is hereby DISMISSED with Prejudice pursuant to his Fifth Amendment right barring double jeopardy.

It is so Ordered.

SIGNED at Houston, Texas this 16th day of July, 2012.

Kenneth M. Hoyt
United States District Judge